David S. Cohen
Nicholas A. Bassett
MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street, NW
Suite 1100
Washington, D.C. 20006
Telephone: (202) 835-7500
Facsimile: (202) 835-7586

*Counsel to Plaintiffs Lehman Brothers Holdings Inc.,
as Plan Administrator, and Lehman Brothers Special Financing Inc.,*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>      Debtors. | |
| Lehman Brothers Holdings Inc., as Plan Administrator, and Lehman Brothers Special Financing Inc.,<br><br>      Plaintiffs,<br><br>v.<br><br>Wellmont Health System,<br><br>      Defendant. | Civil Action No.: 1:14-cv-01083-(LGS) |

**MEMORANDUM OF LAW OF LEHMAN BROTHERS HOLDINGS INC. AND
LEHMAN BROTHERS SPECIAL FINANCING INC. IN OPPOSITION TO
WELLMONT HEALTH SYSTEM'S MOTION
TO WITHDRAW THE REFERENCE**

## TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ...................................................................... 1

II.  BACKGROUND ........................................................................................... 3

     A.   Relevant Facts ................................................................................. 3

          1.   The TRS Agreement and Certifications ................................... 3

          2.   Wellmont's Strategic Post-Petition Breach of the TRS Agreement .......... 4

     B.   Procedural History .......................................................................... 5

III. ARGUMENT ................................................................................................ 7

     A.   Legal Standard ................................................................................ 7

     B.   The Motion Should Be Denied to Prevent Improper Forum Shopping ................. 8

     C.   The Other *Orion* Factors and the Standing Order Require the Court to
          Deny Wellmont's Motion ............................................................... 12

                    i.    Lehman's Claims Under the Bankruptcy Code Are Core
                          Claims on Which the Bankruptcy Court May Issue a Final
                          Judgment .......................................................................... 12

                          a.    Lehman's Claims Under Sections 362 and 542(b)
                                Are Core ................................................................... 12

                          b.    Lehman's Core Claims Under Sections 362 and
                                542(b) Fall Within the Public Rights Exception and,
                                Thus, Are Subject to Final Adjudication by the
                                Bankruptcy Court ..................................................... 15

                    ii.   Allowing the Bankruptcy Court to Retain Jurisdiction
                          Promotes Judicial Efficiency and Uniformity in the
                          Bankruptcy Administration ............................................. 18

                    iii.  Wellmont's Alleged Right to a Jury Trial is Insufficient to
                          Justify Withdrawal of the Reference ............................... 22

IV.  CONCLUSION ........................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bankr. Servs. Inc. v. Ernst & Young LLP (In re CBI Holding Co.)*,
    529 F.3d 432 (2d Cir. 2008)..................................................................................22

*Burns v. Dennis (In re Se. Materials, Inc.)*,
    467 B.R. 337 (Bankr. M.D.N.C. 2012)................................................................17

*Calderon v. Bank of Am. Corp. ( In re Calderon)*,
    497 B.R. 558 (Bankr. E.D. Ark. 2013) ...........................................................13, 16

*Cape Code Mortg. Trust, Inc. v. Gee (In re Gee)*,
    No. 98 CIV 4174 BSJ, 2000 WL 23251 (S.D.N.Y. Jan. 12, 2000) .......................14

*Cibro Petroleum Prods., Inc. v. City of Albany (In re Winimo Realty Corp.)*,
    270 B.R. 108, 120 (Bankr. S.D.N.Y. 2001)...........................................................9

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
    462 B.R. 457 (S.D.N.Y. 2011).............................................................................16

*Enron Corp. v. Citigroup, Inc. (In re Enron Corp.)*,
    349 B.R. 108 (Bankr. S.D.N.Y. 2006)..................................................................11

*Enron Power Mktg. v. VA Power & Elec. Co. (In re Enron Corp.)*,
    318 B.R. 273 (S.D.N.Y. 2004)..............................................................................23

*EXDS, Inc. v. RK Elec., Inc. (In re EXDS, Inc.)*,
    301 B.R. 436 (Bankr. D. Del. 2003) ...............................................................10, 22

*First Fidelity Bank v. Hooker Invs., Inc (In re Hooker Invs., Inc.)*,
    937 F.2d 833 (2d Cir. 1991)...................................................................................9

*Germain v. Conn. Nat'l Bank*,
    988 F.2d 1323 (2d Cir.1993)................................................................................22

*Geron v. Peebler (In re Pali Holdings, Inc.)*,
    488 B.R. 841 (Bankr. S.D.N.Y. 2013)..................................................................17

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989)..................................................................................................9

*Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*,
    896 F.2d 1384 (2d Cir. 1990)................................................................................14

*Hirsh v. London S.S. Owners' Mut. Life Ins. Assoc. Ltd. (In re Seatrain Lines, Inc.)*,
  198 B.R. 45 (S.D.N.Y. 1996) ............................................................11

*In re 20/20 Sport, Inc.*,
  200 B.R. 972 (Bankr. S.D.N.Y. 1996) .............................................9, 10

*In re Lehman Bros. Holding Inc.*,
  No. 13 CIV. 07481 LGS, 2013 WL 6633431 (S.D.N.Y. Dec. 17, 2013) ...............21

*In re Prosser*,
  No. 06-30009, 2013 WL 996367 (D.V.I. Mar. 14, 2013) ..........................17

*Ka Kin Wong v. HSBC Bank USA, N.A.*,
  No. 09-cv-06841 (LTS) (S.D.N.Y. Oct. 14, 2009) ...............................19

*Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.)*,
  136 B.R. 59, 61 (S.D.N.Y. 1992) ...............................................23

*KHI Liquidation Trust v. Wisenbaker Builder Servs., Inc. (In re Kimball Hill, Inc.)*,
  480 B.R. 894 (Bankr. N.D. Ill. 2012) .........................................11

*Kriegman v. Philips (In re LLS Am., LLC)*,
  09-06194-PCW11, 2013 WL 1331025 (Bankr. E.D. Wash. Apr. 1, 2013) ............11

*Langenkamp v. C.A. Culp*,
  498 U.S. 42 (1990) ..........................................................9, 22

*Lehman Bros. Commercial Corp. v. Ford Global Treasury, Inc.*
  No. 12-01877 (S.D.N.Y. May 28, 2013) ...............................18, 19, 20, 21

*Lehman Bros. Holdings Inc. v. Credit Agricole Corp. & Inv. Bank (In re Lehman Bros). Holdings Inc.)*,
  No. 13-cv-3373 (LTS) (S.D.N.Y. Aug. 8, 2013) .................................19

*Lehman Bros. Holdings Inc. v. Intel Corp. (In re Lehman Bros. Holdings Inc.)*,
  502 B.R. 376 (Bankr. S.D.N.Y. 2013) .........................................12, 13

*Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank (In re Lehman Bros. Holdings Inc.)*,
  480 B.R. 179 (S.D.N.Y. 2012) ................................................19

*Lehman Bros. Special Fin. Inc. v. Fed. Home Loan Bank of Cincinnati*,
  No. 13-cv-4121 (RJS) (S.D.N.Y. Mar. 17, 2014) ..............................19, 20

*LTV Steel Co. v. David Graham Co. (In re Chateaugay Corp.)*,
  78 B.R. 713 (Bankr. S.D.N.Y. 1987) ...........................................13

*LTV Steel Co. v. Union Carbide Corp.* (*In re Chateaugay Corp.*),
    193 B.R. 669 (Bankr. S.D.N.Y. 1996)....................................................................11

*Meoli v. Huntington Nat'l Bank (In re Teleservices Grp., Inc.),*
    456 B.R. 318 (Bankr. W.D. Mich. 2011)............................................................16

*Messer v. Peykar Int'l Co. (In re Fine Diamonds, LLC),*
    501 B.R. 159 (Bankr. S.D.N.Y. 2013)................................................................17

*Mich. State Hous. Dev. Auth. v. Lehman Bros. Derivatives Prods. Inc.*,
    No. 11-cv-3392 (JGK) (S.D.N.Y. Sept. 14, 2011)............................................19

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,*
    458 U.S. 50 (1982) .............................................................................................15

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),*
    4 F.3d 1095 (2d Cir. 1993)....................................................................... passim

*Pearson Educ., Inc. v. Almgren*,
    685 F.3d 691 (8th Cir. 2012) ..............................................................................22

*Penson Financial Services, Inc. v. O'Connell (In re Arbco Capital Mgmt., LLP),*
    479 B.R. 254 (S.D.N.Y. July 12, 2012)........................................................7, 20

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff*
    *Inv. Sec. LLC),*
    486 B.R. 579 (Bankr. S.D.N.Y. 2013) ...............................................................7

*Stern v. Marshall,*
    131 S. Ct. 2594 (2011)............................................................................. passim

*Sunrise Oak Prof'l Park Condo. Unit Owners Ass'n v. 1801 Robert Fulton Drive, LLC*
    *(In re 1801 Robert Fulton Drive, LLC),*
    11-12753-BFK, 2012 WL 364251 (Bankr. E.D. Va. Feb. 2, 2012) .................14, 15

*Turner v. First Cmty. Credit Union (In re Turner),*
    462 B.R. 214 (Bankr. S.D. Tex. 2011), *aff'd*, 2012 U.S. Dist. LEXIS 35195 (S.D.
    Tex. Mar. 15, 2012) ...........................................................................................16

*Veyance Techs., Inc. v. Lehman Bros. Special Fin., Inc.*,
    No. 09 CIV. 8851 (BSJ), 2009 WL 4496051 (Bankr. S.D.N.Y. Dec. 3, 2009).....................19

*Walker, Truesdel, Roth & Assocs. v. Blackstone Grp. (In re Extended Stay, Inc.),*
    466 B.R. 188 (Bankr. S.D.N.Y. 2011)................................................... passim

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.),*
    467 B.R. 712 (S.D.N.Y. 2012)...........................................................................15

**STATUTES**

11 U.S.C. § 362............................................................................................ passim

11 U.S.C. § 541(a) ...............................................................................................14

11 U.S.C. § 542............................................................................................ passim

11 U.S.C. § 542(b) .........................................................................................6, 12

28 U.S.C. § 157(a) .................................................................................................7

28 U.S.C. § 157(b) ...............................................................................................15

28 U.S.C. § 157(b)(2) ..........................................................................................13

28 U.S.C. § 157(b)(3) ..........................................................................................14

28 U.S.C. § 157(d) .................................................................................................7

**OTHER AUTHORITIES**

Fed. R. Bank. P. 3006 ....................................................................................6,9, 11

U.S. Dist. Ct., S.D.N.Y., Standing Order No. M-431 (effective Jan. 31, 2012)....................2, 8, 19

U.S. CONST. art III ...............................................................................................8

U.S. CONST. amend. VII .................................................................................22, 23

Plaintiffs Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of LBHI and Its Affiliated Debtors (the "Plan"), and Lehman Brothers Special Financing Inc. ("LBSF" and, together with LBHI, the "Plaintiffs" and collectively with their affiliated debtors, the "Debtors" or "Lehman"), by their undersigned attorneys, submit this Memorandum of Law in opposition (the "Opposition") to Wellmont Health System's ("Wellmont") Motion to Withdraw the Reference (the "Motion") in the above-referenced adversary proceeding (the "Adversary Proceeding").  In support of its Opposition, Lehman respectfully states as follows:

## I.   PRELIMINARY STATEMENT

Wellmont's Motion must be seen for what it is: a thinly-veiled attempt at forum shopping.  By filing its adversary complaint (the "Complaint") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Lehman has acted properly, in good faith and, most importantly, in compliance with the Standing Order (defined below) of this Court.  Wellmont, however, has not done the same.  Wellmont's attempt to wrongfully deprive the Bankruptcy Court of jurisdiction by deceptively withdrawing the proof of claim it filed over four years ago should be rejected.  Specifically, shortly after Lehman informed Wellmont that it planned to file the Complaint in the Bankruptcy Court, and while the parties were discussing the possibility of settlement, Wellmont withdrew its proof of claim that related to the matters at issue in this case.

Absent this strategic act, it is clear that Wellmont would have consented to and would be subject to the jurisdiction of the Bankruptcy Court for purposes of the Adversary Proceeding.  The timing of Wellmont's withdrawal goes beyond mere coincidence; it was a transparent, preemptive maneuver to create the false appearance that Wellmont is not subject to

the Bankruptcy Court's jurisdiction and to provide purported support for its Motion.  This intentional and improper behavior is exactly the type of forum shopping that the Second Circuit made clear should be prevented in *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095 (2d Cir. 1993) ("<u>Orion</u>").  For this reason alone, the Motion should be denied.

Even if the Court determines that Wellmont has not engaged in improper forum shopping or that certain of Lehman's claims are not core claims, *Orion* supports and this Court's Standing Order M-431, effective Jan. 31, 2012 (the "<u>Standing Order</u>"), expressly contemplates that the Adversary Proceeding proceed initially in the Bankruptcy Court in order to promote judicial efficiency and uniformity in bankruptcy administration.  Lehman's claims against Wellmont are similar to other claims currently pending before the Bankruptcy Court, which claims concern novel bankruptcy issues that are best and most efficiently considered, at least in the first instance, by the Bankruptcy Court.

The Motion must also be denied because Lehman's claims against Wellmont include claims that are indisputably core claims on which the Bankruptcy Court can issue a final judgment.  In particular, the Adversary Proceeding seeks resolution of Lehman's claims for Wellmont's violation of the automatic stay and turnover of estate property under section 542, claims which arise uniquely under the federal regulatory scheme of the Bankruptcy Code.  As such, these claims undeniably invoke substantive "public rights" under the Bankruptcy Code, which can and should be decided by the Bankruptcy Court in accordance with *Stern v. Marshall*, 131 S. Ct. 2594 (2011).

Finally, withdrawal of the reference is not required based on Wellmont's purported right to a jury trial because Wellmont waived its right to a jury trial by filing a proof of

claim.  Moreover, contrary to Wellmont's suggestion, any right that Wellmont may have had to a jury trial is not sufficient to justify withdrawal of the reference at this early stage of the proceedings when it is unclear when, or even if, this case will proceed to trial.  For this and all of the other foregoing reasons, the Motion should be denied.

## II.      BACKGROUND

The Motion arises from the Adversary Proceeding that Lehman commenced in the Bankruptcy Court alleging Wellmont's violation of the Bankruptcy Code and its intentional and strategic post-petition breach of a prepetition total return swap agreement (the "TRS Agreement") with LBSF, which breach was designed to improperly and illegally avoid Wellmont's payment obligation to Lehman.

### A.      Relevant Facts

### 1.      The TRS Agreement and Certifications

On or around April 29, 2002, LBSF and Wellmont (collectively, the "Parties") entered into a 1992 ISDA Master Agreement, a schedule to the Master Agreement, and a credit support annex (the "CSA" and collectively with the Master Agreement and the schedule, the "ISDA Agreement").  Compl. ¶ 13.  The ISDA Agreement governed a number of derivatives transactions between the Parties, including the TRS Agreement at issue in this action. *Id.*

Under the TRS Agreement, LBSF was required to pay (or receive) the total economic return (or loss) on a series of bonds (the "Bonds") to Wellmont.  *Id.* ¶ 1.  If the price of the Bonds was below par value at the conclusion of the TRS Agreement, Wellmont would owe a

final payment in the amount of the contractually determined "Return Amount"[1] to LBSF.  *Id.*
Conversely, if the price of the Bonds was above par value, LBSF would owe the Return Amount
to Wellmont.  The TRS Agreement was scheduled to mature on September 11, 2011 (the "TRS
Maturity Date").  *Id.*  As part of the TRS Agreement, Wellmont made certain certifications (the
"Certifications") to LBSF, including that Wellmont did not have the right to redeem the Bonds at
any price prior to the TRS Maturity Date.  *Id.* ¶ 2.

### 2.     Wellmont's Strategic Post-Petition Breach of the TRS Agreement

On September 15, 2008, LBHI, LBSF's parent and "Creditor Support Provider"
under the TRS Agreement, voluntarily commenced a case under chapter 11 of Title 11 of the
Bankruptcy Code.  *Id.* ¶ 6.  This filing constituted an event of default under the ISDA
Agreement, and, pursuant to its terms, Wellmont was permitted to terminate any transactions
with LBSF, including the TRS Agreement.  *Id.* ¶ 25.  Wellmont informed Lehman in a letter,
dated October 31, 2008, that it chose not to terminate any of its transactions with LBSF.  *Id.* ¶
26.  On September 22, 2009, Wellmont did, however, file a proof of claim (No. 31901, the
"Proof of Claim") in the Bankruptcy Court asserting a contingent claim for amounts allegedly
due to Wellmont under the TRS Agreement.

As the TRS Maturity Date (September 1, 2011) approached, the price of the
Bonds remained below par value, meaning that Wellmont would be obligated to make a
significant payment (estimated to be between $11.5 and $15.3 million) to LBSF at maturity.  *Id.*
¶ 3.  Concerned about this potential liability, Wellmont initiated discussions in January 2011
with its financial advisors, Bank of America Merrill Lynch and Ponder & Co., to devise a
strategy for avoiding its financial obligations under the TRS Agreement.  *Id.* ¶ 29.  Under this

---

[1]     Capitalized terms not otherwise defined herein are to be given the meaning ascribed to them in the
Complaint.

strategy, Wellmont, on March 15, 2011, purchased all of the Bonds through a tender offer (the "Tender Offer"), thereby causing the Bonds' redemption prior to the TRS Maturity Date and reducing the Aggregate Principal Amount under the TRS Agreement—and, thus the Return Amount—to zero. *Id.* By implementing this plan, Wellmont knowingly and willfully breached the TRS Agreement and deprived the Lehman estates and their creditors of more than $12 million to which they were contractually entitled.[2] *Id.* ¶ 4.

On May 5, 2011, the same day that Wellmont delivered the Bonds for immediate redemption prior to the TRS Maturity Date, Wellmont sent a letter to Lehman informing Lehman of the Tender Offer and claiming that since Wellmont had reduced the Bonds' face value to zero, Wellmont owed no financial obligations to LBSF. *Id.* ¶ 34. LBSF responded on August 14, 2012, notifying Wellmont that its early redemption of the Bonds constituted a breach of the ISDA Agreement and that if such breach was not remedied within 30 days, it would constitute an event of default (the "Event of Default") under the ISDA Agreement. *Id.* ¶ 37. Wellmont took no action, and thus, defaulted under the ISDA Agreement. *Id.*

**B.     Procedural History**

After LBSF notified Wellmont of its breach of the TRS Agreement, the Parties engaged in settlement discussions in an effort to resolve their dispute. In addition, the Parties participated in the Bankruptcy Court's mandated mediation process for derivatives matters, which culminated in an in-person mediation session in April 2013. Unfortunately, these

---

[2]     Wellmont's conduct was particularly egregious considering that Lehman and Wellmont were actively engaged in negotiations regarding the TRS Agreement at or around the same time as the Tender Offer. Instead of disclosing the Tender Offer—which would have been highly relevant to the Parties' discussions—Wellmont purposefully concealed the transaction. Wellmont intentionally misled Lehman by indicating that the TRS Agreement should not be terminated but rather should be carved out from any settlement or assignment.

settlement efforts were unsuccessful, and the mediation process ended without reaching an agreement.

Unable to reach a settlement with Wellmont, Lehman had no choice but to proceed with litigation.  Before filing the Complaint against Wellmont, however, on October 23, 2013, Lehman made one last good-faith attempt to reengage Wellmont in settlement discussions. On that date, Lehman's undersigned counsel reached out to Wellmont's counsel to inform the latter that Lehman had drafted the Complaint and planned to file it in the Bankruptcy Court. Lehman sent Wellmont's counsel a copy of the draft Complaint for consideration in an effort to facilitate further discussions.[3]

On November 14, 2013, after receiving Lehman's draft Complaint and with the knowledge that Lehman planned to file the Complaint in the Bankruptcy Court, Wellmont preemptively filed a notice of withdrawal (the "Withdrawal") [Dkt. No. 41102] of the Proof of Claim, without prejudice, under Federal Rule of Bankruptcy Procedure 3006.

On November 26, 2013, Lehman commenced the Adversary Proceeding in the Bankruptcy Court.  In the Complaint, Lehman alleged four causes of action: (i) breach of contract, (ii) turnover of the Return Amount to Lehman pursuant to Section 542(b) of the Bankruptcy Code, (iii) a declaratory judgment that Wellmont was willfully violating the automatic stay under Section 362 of the Bankruptcy Code, and (iv) breach of the implied covenant of good faith and fair dealing.

On February 20, 2014, Wellmont filed the Motion, asking this Court to withdraw the reference of the Adversary Proceeding to the Bankruptcy Court.  In its Motion, Wellmont

---

[3]     In exchange for its receipt of the draft Complaint, Wellmont expressly agreed not to commence any legal action against Lehman before Lehman could file the Complaint.

argued, among other things, that it has not consented to the Bankruptcy Court's jurisdiction because it has withdrawn the Proof of Claim

## III.    ARGUMENT

### A.    Legal Standard

Pursuant to 28 U.S.C. § 157(a), "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." *Id.*  District courts have authority to withdraw a reference under appropriate conditions.  *See* § 157(d); *see also Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 486 B.R. 579, 581 (Bankr. S.D.N.Y. 2013).  In relevant part, 28 U.S.C. § 157(d) provides for permissive withdrawal of the reference to the Bankruptcy Court:  "The district court ***may*** withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, ***for cause shown***."  28 U.S.C. § 157(d) (emphasis added).

When determining whether to withdraw the bankruptcy court reference, district courts in the Second Circuit consider the factors set forth in *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993) (the "*Orion* Factors").  The *Orion* Factors require the district court to consider: (1) whether the bankruptcy court has the authority to enter final judgment on the claim and whether the claim is core or non-core;[4] (2) whether the claims are legal or equitable (including whether the moving party may be entitled to a jury trial); and (3) considerations of efficiency, prevention of forum shopping and uniformity in the administration of bankruptcy laws.  *See, e.g.*, *Penson Fin. Servs. v. O'Connell (In re Arbco Capital Mgmt., LLP)*, 479 B.R. at

---

[4]    *See Walker, Truesdel, Roth & Assocs. v. Blackstone Grp. (In re Extended Stay, Inc.)*, 466 B.R. 188, 197 (Bankr. S.D.N.Y. 2011) ("[T]here is nothing in *Stern* to suggest that the statutory distinction between core claims and non-core claims is an inappropriate consideration when analyzing permissive withdrawal under section 157(d).").

259 (citing *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993)).  Although the first factor is

often critical to the analysis, "no one factor is dispositive."  *In re Extended Stay, Inc.*, 466 B.R.

188, 197 (Bankr. S.D.N.Y. 2011).

Importantly, the District Court for the Southern District of New York (the

"District Court") has issued Standing Order M-431, which provides that "[i]f a bankruptcy judge

or district judge determines that entry of a final order or judgment by a bankruptcy judge would

not be consistent with Article III of the United States Constitution in a particular proceeding

referred under this order and determined to be a core matter, the bankruptcy judge shall, unless

otherwise ordered by the district court, hear the proceeding and submit proposed findings of fact

and conclusions of law to the district court."  Standing Order.

### B.    The Motion Should Be Denied to Prevent Improper Forum Shopping

One significant factor that courts consider when deciding a motion to withdraw

the reference is whether one of the parties has engaged in improper forum shopping.  *See In re*

*Orion Pictures Corp.*, 4 F.3d at 1101 ("District courts in this circuit have considered a number of

factors . . . [including] prevention of forum shopping").  Contrary to Wellmont's suggestion, it is

Wellmont, not Lehman, that has blatantly engaged in forum shopping.  First, Lehman's filing of

the Complaint in the Bankruptcy Court was entirely and unquestionably proper.  The Standing

Order requires cases involving core claims to be filed in the Bankruptcy Court absent an order of

the District Court to the contrary (no such order was issued here).  Second, as Wellmont

acknowledges in its Motion, Wellmont filed a proof of claim in the Bankruptcy Court relating to

the TRS Agreement with LBSF, thereby submitting to the Bankruptcy Court's equitable

jurisdiction.  Wellmont kept the Proof of Claim on file for more than four years, until it decided

it would prefer to be sued in this Court.

8

By filing the Proof of Claim against Lehman's estate, Wellmont submitted itself to the Bankruptcy Court's jurisdiction and to its determination with respect to disputes arising from the claim.  As the Supreme Court explained in *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33 (1989), "by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. C.A. Culp*, 498 U.S. 42, 44 (1990) (quoting *Granfinanciera*, 492 U.S. at 58-59); *see also First Fidelity Bank v. Hooker Invs., Inc (In re Hooker Invs., Inc.), Inc.* 937 F.2d 833, 838 (2d Cir. 1991) (the process of allowance of claims is "integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction, which the creditor has invoked by filing the claim"); *Cibro Petroleum Prods., Inc. v. Cit of Albany (In re Winimo Realty Corp.)*, 270 B.R. 108, 120 (Bankr. S.D.N.Y. 2001) (stating that "[w]here a defendant to a prepetition contract action has filed a proof of claim against the estate, defendant has sought the benefits of the bankruptcy court's jurisdiction") (internal quotation marks omitted).  Wellmont subjected itself to the Bankruptcy Court's equitable power when it filed the Proof of Claim and should not be permitted to later withdraw the Proof of Claim to avoid the Bankruptcy Court's jurisdiction.

Wellmont argues that by withdrawing its Proof of Claim,[5] the claim became "a nullity and the parties are left as if the claim had never been filed."  *See* Mot. at 10 n.5 (citing *In*

---

[5]   Wellmont purported to withdraw its proof of claim pursuant to Rule 3006, which allows a creditor to withdraw a claim as of right unless, among other things, a complaint has been "filed against that creditor in an adversary proceeding" or the creditor "has participated significantly in the case."  *See* Fed. R. Bankr. P. 3006.  Even if Wellmont properly withdrew its claim as of right under Rule 3006 on November 14, 2013 (which it did not, because it had already significantly participated in the case at that time), it certainly could not have done so after Lehman commenced the Adversary Proceeding on November 26, 2013.  *See id.* (stating that after adversary proceeding has been filed, creditor can only withdraw claim upon order of court).  By seeking to withdraw its claim *before* the filing of the Adversary Proceeding, but *after* seeing a draft of the Complaint that Lehman, Wellmont clearly took advantage of Lehman's good faith effort to

*re 20/20 Sport, Inc.*, 200 B.R. 972 (Bankr. S.D.N.Y. 1996)).  This argument is unconvincing.  *In re 20/20 Sport*, the case relied upon by Wellmont, is readily distinguishable.  In that case, the creditor sought to withdraw its proof of claim only one month after filing it and did not act elusively in doing so—instead, the creditor expressly sought court approval to withdraw the claim and made its intentions clear to both the bankruptcy court and the plaintiff in the adversary proceeding.  *In re 20/20 Sport, Inc.*, 200 B.R. at 972.  Here, by contrast, Wellmont waited ***more than four years*** to file the Withdrawal and did so for the secret purpose of selecting the forum for the Adversary Proceeding after seeing a copy of the draft Complaint.  The *In re 20/20* case is further distinguishable on the grounds that the creditor in that case did not file its proof of claim until ***after*** the adversary proceeding had been commenced, thus making it "clear that the [plaintiff] Debtor did not rely on [the creditor's] submission to the equitable jurisdiction of the bankruptcy court when it commenced the Adversary Proceeding."  *Id.* at 978.  Wellmont's claim, however, had been on file for more than four years before Lehman drafted the Complaint.  Thus, it was entirely reasonable for Lehman to have relied on the existence of the Proof of Claim when deciding whether and in which court to sue Wellmont.

Other cases, with facts more similar to those at issue here, have clearly held that a creditor ***may not*** defeat a bankruptcy court's jurisdiction by withdrawing a proof of claim.  *See, e.g.*, *EXDS, Inc. v. RK Electric, Inc. (In re EXDS, Inc.)*, 301 B.R. 436, 438 (Bankr. D. Del. 2003).  In *In re EXDS*, the creditor sought to withdraw a proof of claim more than one year after filing it in an effort to "have its right to a jury trial reinstated" in an adversary proceeding that was later filed against it.  *Id.* at 438.  The court rejected this attempt at forum shopping, holding that the creditor "lost its right to a jury trial because it elected to participate in the equity court

---

engage in further settlement negotiations and directly undermined its reasonable expectation that Wellmont would not take any action to prejudice Lehman's rights while settlement negotiations were occurring.

proceeding. . . .  I do not believe that a creditor can, for strategic reasons, reverse the result it triggered by filing a proof of claim by later withdrawing the claim." *Id.* at 440 (granting plaintiff debtor's motion to strike creditor's demand for jury trial).  *See also Enron Corp. v. Citigroup, Inc. (In re Enron Corp.)*, 349 B.R. 108, 115 (Bankr. S.D.N.Y. 2006) ("The disposition of a claim, alone, does not nullify the consequences of a creditor's invocation of jurisdiction premised upon such claim."); *KHI Liquidation Trust v. Wisenbaker Builder Servs., Inc. (In re Kimball Hill, Inc.)*, 480 B.R. 894, 904 (Bankr. N.D. Ill. 2012) ("As [creditor] did file proofs of claim against certain of the Debtors, it is within the court's authority to consider the Second Amended Complaint in resolving the liability of those claims. . . .  [Creditor] may not withdraw those claims merely to defeat this court's authority."); *Kriegman v. Philips (In re LLS Am., LLC)*, 09-06194-PCW11, 2013 WL 1331025 at *4 n.2 (Bankr. E.D. Wash. Apr. 1, 2013) ("The defendant now offers to withdraw the proof of claim. Rule 3006 requires a motion to that effect. Also withdrawal has no effect upon jurisdiction.") (citations omitted).  Similarly, at least one bankruptcy court has refused to allow a creditor to withdraw a proof of claim when it sought to do so to improperly influence the court's decision on a motion for abstention.  *See Hirsch v. London S.S. Owners' Mut. Life Ins. Ass'n Ltd. (In re Seatrain Lines, Inc.)*, 198 B.R. 45, 49 n. 4 (S.D.N.Y. 1996) (citing Tr. of Hearing before Judge Conrad).

　　　　The same analysis adopted by the foregoing courts is applicable here.  Wellmont cannot file the Proof of Claim and thereby avail itself of the protections and processes of the Bankruptcy Court, and then, ***four years later, after seeing a draft of the Complaint***, cry foul when it suddenly decides it would rather be sued in this Court.  This is exactly the kind of forum shopping that courts have rejected in considering motions to withdraw the reference.  *See LTV Steel Co. v. Union Carbide Corp.* (*In re Chateaugay Corp.*), 193 B.R. 669, 674-75 (Bankr.

11

S.D.N.Y. 1996) (denying creditor's motion to withdraw the reference, holding that "[s]pecial circumstances exist when the first action is a blatant example of forum shopping—e.g., ***when one party notifies another of its intent to sue***, and the second party makes a preemptive strike by seeking [relief] in the forum of its choice") (emphasis added)).

Accordingly, based on this *Orion* Factor, the Motion should be denied.

**C.      The Other *Orion* Factors and the Standing Order Require the Court to Deny Wellmont's Motion**

The remaining *Orion* Factors in this case also weigh heavily against withdrawing the reference and support a decision by this Court permitting the Bankruptcy Court to fully adjudicate the Adversary Proceeding.  Even if the Bankruptcy Court lacks the authority to issue a final judgment on some or all of Lehman's claims, the Standing Order provides that the Adversary Proceeding should proceed in the Bankruptcy Court.

**i.      Lehman's Claims Under the Bankruptcy Code Are Core Claims on Which the Bankruptcy Court May Issue a Final Judgment**

Lehman's claims under sections 362 and 542(b) of the Bankruptcy Code are undeniably core claims.  They are also claims that fall within the "public rights exception," thus allowing the Bankruptcy Court to finally adjudicate them following the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011).  Accordingly, this *Orion* factor weighs against withdrawing the reference.

**a.      Lehman's Claims Under Sections 362 and 542(b) Are Core**

A core proceeding is, as a general matter, a proceeding that "invokes a substantive right under the Bankruptcy Code or that could arise only in the context of a bankruptcy case." *Lehman Bros. Holdings Inc. v. Intel Corp. (In re Lehman Bros. Holdings Inc.*), 502 B.R. 376,

382 (Bankr. S.D.N.Y.  2013) (citation omitted).  Claims for relief involving violations of the automatic stay under section 362 or requests for turnover of estate property under section 542, which unquestionably invoke substantive rights under the Bankruptcy Code and arise solely in the context of a bankruptcy case, are core proceedings.  *See LTV Steel Co. v. David Graham Co. (In re Chateaugay Corp.)*, 78 B.R. 713, 716 (Bankr. S.D.N.Y. 1987) ("The instant controversy involves an alleged violation of the automatic stay imposed by § 362 of the Code, and a request for turnover of estate property pursuant to § 542.  By their very nature these matters are integral to the administration of the Debtors' estate and are explicitly recognized as core matters."); *see also* 28 U.S.C. § 157(b)(2) (non-exhaustive list of core claims).[6]  Lehman's claims against Wellmont under sections 362 and 542 are therefore core claims.

Indeed, Wellmont does not dispute that claims under sections 362 and 542 are core.  Instead, it argues that Lehman's claims in this case cannot be core because they are allegedly duplicative of its breach of contract claims.  Wellmont is wrong.  Lehman's claims under sections 362 and 542 are independent, standalone claims.

Although they may share a common factual basis with Lehman's breach of contract claims, Lehman's claims under sections 362 and 542 have ***independent legal bases***. The claims are premised not on any alleged breach of contract *per se*, but rather on Wellmont's deliberate post-petition efforts to deprive LBSF of estate property with the explicit knowledge that LBSF (i) was a debtor under chapter 11 of the Bankruptcy Code and (ii) asserted both a legal

---

[6]      *Calderon v. Bank of Am. Corp. (In re Calderon)*, 497 B.R. 558, 564 (Bankr. E.D. Ark. 2013) (noting that under 28 U.S.C. § 157(b)(2), "[s]tay violation actions are not listed, but the omission is insignificant" and actions for such violations are core) (citation omitted).

13

and equitable interest in the property.[7]  Wellmont's continued exercise of control and failure to

turn over estate property to LBSF is an express violation of the Bankruptcy Code that entitles

LBSF to seek federal statutory remedies independent of the remedies available under state law

for breach of contract.

That the resolution of these claims may cause the Bankruptcy Court to look to

New York contract law does not mean the claims are non-core.  Indeed, 28 U.S.C. § 157(b)(3)

expressly provides that "[a] determination that a proceeding is not a core proceeding shall not be

made solely on the basis that its resolution may be affected by State law."  *Id.*; *see also*, *e.g.*,

*Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods.*

*Corp.)*, 896 F.2d 1384, 1389 (2d Cir. 1990) ("[T]he mere fact that Gulf's claim raises issues of

state law does not preclude a holding that the adversary proceeding is core. The relevant inquiry

is whether the nature of this adversary proceeding, rather than the state or federal basis for the

claim, falls within the core of federal bankruptcy power.") (citations omitted).   As such, the fact

that resolution of Lehman's claims under sections 362 and 542 may require a determination of

Lehman's and Wellmont's respective property rights under state law is of absolutely no

consequence and does not render Lehman's claims non-core.  *See*, *e.g.*, *Cape Code Mortg. Trust,*

*Inc. v. Gee (In re Gee)*, No. 98 CIV 4174 BSJ, 2000 WL 23251, at *3 (S.D.N.Y. Jan. 12, 2000)

("At the outset, this Court notes that the mere fact that the Trustee's claim raises issues of state

law, rather than purely federal claims, does not thereby preclude a finding that the adversary

proceeding is core.") (citation omitted); *Sunrise Oak Prof'l Park Condo. Unit Owners Ass'n v.*

*1801 Robert Fulton Drive, LLC (In re 1801 Robert Fulton Drive, LLC)*, No. 11-12753-BFK,

---

[7]     With respect to Wellmont's violation of the automatic stay, to the extent Wellmont disputed LBSF's
asserted property interest, Wellmont could have, and should have, obtained relief from the automatic stay
pending resolution of the dispute.

2012 WL 364251, at *1 (Bankr. E.D. Va. Feb. 2, 2012) ("This is a core proceeding under 28

U.S.C. § 157(b), because it involves a determination of what is, and is not, property of the

bankruptcy estate under 11 U.S.C. § 541(a). This is so even though the determination to be made

turns entirely on State law. *See* 28 U.S.C. § 157(b)(3)") (citations omitted).

### b.  Lehman's Core Claims Under Sections 362 and 542(b) Fall Within the Public Rights Exception and, Thus, Are Subject to Final Adjudication by the Bankruptcy Court

In addition to being core, Lehman's claims for relief under sections 362 and

542(b) also fall squarely within the "public rights exception" enumerated in *Northern Pipeline*

*Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982) ("*Marathon*") and affirmed in

*Stern v. Marshall*, 131 S. Ct. 2594 (2011).  Accordingly, the Bankruptcy Court has the authority

to enter final judgment on these claims.  This second element of the first *Orion* factor weighs

heavily against withdrawing the reference.

In *Stern*, the U.S. Supreme Court clarified that bankruptcy courts have the

authority to enter final judgment on core claims only if (1) the claims (a) fall within the "public

rights exception" or (b) are necessary to the resolution of a creditor's proof of claim; or (2) the

parties consent to the Bankruptcy Court's jurisdiction.  *See*, *e.g.*, *Weisfelner v. Blavatnik (In re*

*Lyondell Chem. Co.)*, 467 B.R. 712, 720 (S.D.N.Y. 2012) (citing *Stern*, 131 S. Ct. at 2608, 2614,

2618).

The "public rights exception" is limited to "cases in which the claim at issue

derives from a federal regulatory scheme, or in which resolution of the claim by an expert

government agency is deemed essential to a limited regulatory objective within the agency's

authority."  *Stern*, 131 S. Ct. at 2613.  Stated simply, the public rights exception applies to claims

that "stem[] from the bankruptcy itself."  *Id.* at 2618.  Here, the claims brought by Lehman under

each of sections 362 and 542 derive solely from the federal regulatory scheme of the Bankruptcy

Code and stem from Lehman's bankruptcy itself.  These claims plainly fall within the public

rights exception and may be finally adjudicated by the Bankruptcy Court.

>          Indeed, it is well-established under the post-*Stern* jurisprudence that a claim

brought pursuant to section 362 of the Bankruptcy Code concerns public rights.  As one court

has explained:

> Disputes over ***rights created by the Bankruptcy Code itself*** as part of the public
> bankruptcy scheme also ***fall within the "public rights" exception***.    The
> Bankruptcy Court may enter final judgments in these matters. This lawsuit relates
> solely to the automatic stay, a right established by § 362 of the Bankruptcy Code,
> and it falls within the Court's constitutional authority.

*Turner v. First Cmty. Credit Union (In re Turner)*, 462 B.R. 214, 221 (Bankr. S.D. Tex. 2011),

*aff'd*, U.S. Dist. LEXIS 35195 (S.D. Tex. Mar. 15, 2012) (emphasis added) (citations omitted);

*id.* at 222 ("Stated differently, the existence of, and the benefits provided by, the automatic stay

do not constitute a private right of any one specific person or entity, but rather comprise a public

right that inures to the benefit of all those persons involved in a bankruptcy."); *see also Calderon*

*v. Bank of Am. Corp. (In re Calderon)*, 497 B.R. 558, 565 (Bankr. E.D. Ark. 2013) ("Applying

the Supreme Court's varied public rights formulations, the Court joins those courts which have

held that the rights created and vindicated by § 362(k)(1) are so fundamental to our bankruptcy

system ... that they should, therefore, be viewed as 'public rights'"); *see generally Meoli v.*

*Huntington Nat'l Bank (In re Teleservices Grp., Inc.)*, 456 B.R. 318, 335-36 (Bankr. W.D. Mich.

2011) ("Therefore, it does not appear that *Stern* limits my ability under Authority Section

157(b)(2)(G) to enter final orders regarding the modification of the automatic stay either."); *cf.*

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 469 (S.D.N.Y.

2011) (finding that claims did not fall within "public rights" exception where claims existed "prior to and independent of any bankruptcy proceedings").

Similarly, and for the same reason that claims under section 362 derive from rights created by the Bankruptcy Code, courts have held that a claim for turnover under section 542 of the Bankruptcy Code falls within the public rights exception and, therefore, is a claim on which the Bankruptcy Court can enter final judgment. *See Geron v. Peebler (In re Pali Holdings, Inc.)*, 488 B.R. 841, 843, 848-51 (Bankr. S.D.N.Y. 2013) (holding that because the adjudication of a turnover claim is "a paradigmatic exercise of the Court's *in rem* jurisdiction," the court clearly had authority to enter final judgment on such a claim); *accord Messer v. Peykar Int'l Co. (In re Fine Diamonds, LLC)*, 501 B.R. 159, 165 n.3 (Bankr. S.D.N.Y. 2013); *see also In re Prosser*, No. 06-30009, 2013 WL 996367, at *6-7 (D.V.I. Mar. 14, 2013) ("The right to prosecute [a turnover] claim stems exclusively from federal law.  Indeed, it has no existence separate and apart from the bankruptcy statutory scheme, since it presupposes the existence of a bankruptcy estate to which property may be turned over."); *Burns v. Dennis (In re Se. Materials, Inc.)*, 467 B.R. 337, 357 (Bankr. M.D.N.C. 2012) ("Pursuant to *Stern*, the Court has the constitutional authority to enter a final judgment regarding turnover proceedings.").  As the Bankruptcy Court for the Southern District of New York has correctly noted, "the reported post-*Stern* decisions have overwhelmingly held that bankruptcy judges can constitutionally enter final judgments in turnover actions."  *In re Pali Holdings*, *Inc.,* 488 B.R. at 850 (collecting cases).

Faced with this clear weight of authority, Wellmont's only response is that because Lehman's bankruptcy claims are allegedly duplicative of its breach of contract claim, they do not concern public rights and, therefore, cannot be finally adjudicated by the Bankruptcy Court.  Wellmont is wrong as a matter of fact and law.  As an initial matter, for the reasons

discussed in detail above, Lehman's claims under sections 362 and 542 are simply not duplicative of its breach of contract claim.  In addition, Wellmont's reliance on the unpublished *Ford Global* decision is misplaced, as that decision is factually distinguishable.[8]

        In *Ford Global*, the dispute between the parties concerned only the interpretation of specific contractual provisions governing the proper calculation of certain termination payments arising from the early termination of certain foreign currency swap transactions.  The disagreement between the parties related solely to how those calculations should have been made under the contract.  Here, by contrast, Lehman asserts not only that Wellmont failed to honor its contractual obligations, but also that it took certain illegal actions, intentionally and for the purpose of extinguishing LBSF's interest in property, which violated the automatic stay and entitled LBSF to turnover of its property.  Although the Bankruptcy Court may be required to interpret the contract between the parties to adjudicate Lehman's bankruptcy claims, those claims are centered on Wellmont's bad acts and not the contract between the Parties.

        In sum, Lehman's claims under sections 362 and 542 are core claims that can and should be finally adjudicated by the Bankruptcy Court.  Therefore, this *Orion* Factor clearly counsels against withdrawing the reference.

        **ii.**    **Allowing the Bankruptcy Court to Retain Jurisdiction Promotes Judicial Efficiency and Uniformity in the Bankruptcy Administration**

        Even if this Court determines that (i) the Bankruptcy Court lacks the authority to issue a final order on any, or a subset, of Lehman's claims or (ii) the Motion should not be

---

[8]    Notably, although the *Ford Global* court held that the plaintiff's claims were not core claims on which the Bankruptcy Court could issue a final judgment, it ultimately denied the defendant's motion to withdraw the reference finding that due to the complexity of the Lehman case and the Bankruptcy Court's expertise in bankruptcy law, "a consideration of efficiency weighs against withdrawing the reference."  *See* Mem. & Order at 5, *Lehman Bros. Commercial Corp. v. Ford Global Treasury, Inc.* ("*Ford Global*"), No. 12-01877 (S.D.N.Y. May 28, 2013).

denied in full to prevent improper forum shopping, the Standing Order ***expressly contemplates that*** the Bankruptcy Court will hear the Adversary Proceeding for at least the purpose of issuing findings of fact and conclusions of law.  *See* Standing Order.  Consistent with the Standing Order, continuing the reference to the Bankruptcy Court until it becomes time to enter a final judgment promotes judicial efficiency and uniformity of administration. *See Stern v. Marshall*, 131 S. Ct. at 2620 (characterizing holding as "narrow" and stating that the Court's holding does not "meaningfully change[] the division of labor" between the bankruptcy courts and district courts); *see also In re Extended Stay, Inc.*, 466 B.R. at 207 ("Even if *Stern* precludes the bankruptcy court from entering final judgments as to certain claims, the bankruptcy court's proposed findings of fact and conclusions of law will narrow the issues to be resolved by this Court.").  Indeed, the District Court has denied numerous motions to withdraw the reference on this basis in adversary proceedings arising out of Lehman's chapter 11 cases.[9]

The efficiencies to be gained by allowing the Bankruptcy Court to preside over this Adversary Proceeding are significant.  First, the Adversary Proceeding presents issues and claims arising in Lehman's chapter 11 cases that are similar to claims arising in other adversary proceedings before the Bankruptcy Court, thereby promoting intra-case uniformity.  As the District Court recently emphasized: "[t]he Lehman bankruptcy involves numerous disputes

---

[9]   *See Veyance Techs., Inc. v. Lehman Bros. Special Fin., Inc.*, 09 CIV. 8851 (BSJ), 2009 WL 4496051, at *1 (S.D.N.Y. Dec. 3, 2009) (denying plaintiff automobile part manufacturer's motion to withdraw the reference); *Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank* (*In re Lehman Bros. Holdings Inc.*), 480 B.R. 179, 182 (S.D.N.Y. 2012) (denying defendant principal clearing bank's motion to withdraw the reference); Mem. Order at 8-9, *Lehman Bros. Holdings Inc. v. Credit Agricole Corp. & Inv. Bank (In re Lehman Bros. Holdings Inc.)*, No. 13-3373 (S.D.N.Y. Aug. 8, 2013) (denying swap counterparty's motion to withdraw the reference); Hr'g Tr. at 65, *Mich. State Hous. Dev. Auth. v. Lehman Bros. Derivatives Prods. Inc.*, No. 11-3392 (S.D.N.Y. Sept. 14, 2011) (same); Hr'g Tr., *Ka Kin Wong v. HSBC Bank USA, N.A.*, No. 09-06841 (S.D.N.Y. Oct. 14, 2009) (denying motion to withdraw the reference filed by certain noteholders in respect of a derivatives transaction); *Lehman Bros. Special Fin. Inc. v. Fed. Home Loan Bank of Cincinnati*, ("*FHLB*") No. 13-4121 (S.D.N.Y. Mar. 17, 2014); *Ford Global* Mem & Order at 5.

involving derivatives contracts, and uniformity is clearly served by leaving all those disputes in the hands of a single court." *FHLB* at 5 (citing *In re Lehman Bros. Holdings Inc.,* 480 B.R. at 196-97); *see also In re Arbco Capital Mgmt., LLP*, 479 B.R. at 267-68 (finding that considerations of efficiency favored denying the motion to withdraw the reference because of the bankruptcy court's expertise and familiarity with similar bankruptcy claims and matters). The same judicial efficiencies and uniformity will be served by continuing the reference to the Bankruptcy Court in this Adversary Proceeding.[10]

Second, Lehman's claims present novel issues of bankruptcy law, including the interpretation of sections 362 and 542 of the Bankruptcy Code,[11] which the Bankruptcy Court is in the best position to resolve. *See FHLB* at 4-5 (noting that "[t]his district is blessed with an exceptionally strong bankruptcy bench"); *In re Extended Stay, Inc.*, 466 B.R. at 207 (denying motion to withdraw reference where "adjudication of these claims will likely raise novel issues of bankruptcy law" because "[a]llowing the bankruptcy courts to consider complex questions of bankruptcy law before they come to the district court for de novo review promotes a more uniform application of bankruptcy law"). The Bankruptcy Court's knowledge and expertise on these legal issues is particularly important in Lehman's complex chapter 11 proceedings. *See*

---

[10]    Moreover, the Bankruptcy Court will likely have greater familiarity with the relevant facts and issues in the Adversary Proceeding than would the District Court. This is true even though Judge Peck, who presided over Lehman's chapter 11 cases since their beginning, is no longer on the bench. Judge Chapman, who has taken over for Judge Peck, may not possess the same historical knowledge and experience, but her oversight of Lehman's chapter 11 matters and numerous adversary proceedings will undoubtedly give her valuable familiarity with Lehman's business and other relevant facts. No other court or judge would be in this same position.

[11]    *Compare* Wellmont Mot. at 13 ("No special bankruptcy experience is necessary to handle this matter. Lehman's two bankruptcy claims do not pose difficult or novel questions of bankruptcy law. To the contrary, they are resolved with the most basic understanding of bankruptcy law."), *with Ford Global* Mem. & Order at 6 (denying motion to withdraw the reference where, among other things, "[w]hile Defendant argues that the Bankruptcy Code claims are meritless breach of contract claims disguised as Bankruptcy Code claims, a finding that the claims are (or are not) meritless under the Bankruptcy Code would itself require an application of bankruptcy law—including a determination as to . . . whether §§ 362 and 542 apply to disputed claims to property.").

*Ford Global* Mem. & Order at 5 (noting that due to, among other things, the complexity of the Lehman case and the Court's expertise in bankruptcy law, "a consideration of efficiency weighs against withdrawing the reference at this time.").

Finally, allowing the Bankruptcy Court to retain jurisdiction over the claims for the time being is consistent with this Court's decision in *In re Lehman Bros. Holding Inc.*, No. 13 CIV. 07481 LGS, 2013 WL 6633431 (S.D.N.Y. Dec. 17, 2013) (J. Schofield).   There, this Court considered a motion to withdraw the reference brought by the Federal Housing Finance Agency regarding a claim classification issue.  *Id.*  Although the Court found withdrawal mandatory because the issue implicated a non-bankruptcy federal statutory regime, the Housing and Economic Recovery Act, it instructed the Bankruptcy Court to oversee the proceeding and issue a report and recommendation. *Id.*  Specifically, the Court found that the issue of claim priority is an issue for which bankruptcy courts "were created to handle," and that "avoidance claims are almost exclusively adjudicated by bankruptcy judges." *Id.* at 3.  Therefore, "[g]iven the complex nature of the claims procedure in the LBHI bankruptcy, the familiarity of Judge Peck with the case, and the expertise of bankruptcy judges generally with avoidance actions and challenges to priority, the Motion to Classify is referred to Judge Peck for a Report and Recommendation." *Id.* (citations omitted).   The same result should occur here: even if the Bankruptcy Court does not have the authority to enter a final judgment on some or all of Lehman's claims, the Adversary Proceeding should be referred to Judge Chapman for a report and recommendation.

### iii. Wellmont's Alleged Right to a Jury Trial is Insufficient to Justify Withdrawal of the Reference

Contrary to Wellmont's suggestion, any alleged right of Wellmont to a jury trial is not sufficient to justify withdrawal of the reference.  In the Second Circuit, a creditor who files a proof of claim waives any right to jury trial with respect to future litigation if the "resolution [of that litigation] affects the allowance or disallowance of the creditor's proof of claim or is otherwise so integral to restructuring the debtor-creditor relationship." *Bankr. Servs. Inc. v. Ernst & Young LLP (In re CBI Holding Co.)*, 529 F.3d 432, 466-67 (2d Cir. 2008) (citations omitted). By filing the Proof of Claim in the Bankruptcy Court relating to Wellmont's rights under the TRS Agreement, Wellmont ***waived*** its right to a jury trial in the Adversary Proceeding.[12]  As discussed in section III.B, *supra*, Wellmont cannot "revive" this right to a jury trial by subsequently withdrawing the Proof of Claim.  *See In re EXDS, Inc.*, 301 B.R. at 438 (granting plaintiff's motion to strike defendant's demand for jury trial in preference action even though defendant had withdrawn proof of claim).

In any event, even if Wellmont somehow had a right to a jury trial, withdrawal of the reference is not appropriate at this time.  "A motion for withdrawal of the reference will not be granted simply because of a party's demand for a jury trial without consideration of how far the litigation has progressed because such decision would run counter to the court's interest injudicial [sic] economy."  *In re Extended Stay, Inc.*, 466 B.R. at 197-98; *id.* at 206 (holding that

---

[12]     *See Langenkamp*, 498 U.S. at 45 (holding that by filing proof of claim against estate, creditor subjects itself to bankruptcy court's equitable jurisdiction, such that "there is no Seventh Amendment right to a jury trial" in subsequent preference action against creditor); *Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1329 (2d Cir.1993) (stating that *Langenkamp* "stands for the proposition that by filing a proof of claim a creditor forsakes its right to adjudicate before a jury any issue *that bears directly on the allowance* of that claim-and does so not so much on a theory of waiver as on the theory that the legal issue has been converted to an issue of equity") (emphasis in original); *see also Pearson Educ., Inc. v. Almgren*, 685 F.3d 691, 695 (8th Cir. 2012) (noting that "[t]he Supreme Court's stated rationale in *Langenkamp* is not limited to preference actions" but applies to any claim that affects the restructuring of debtor-creditor relationship).

"withdrawing the reference [on the basis of a jury demand] is premature where discovery has not yet commenced and plaintiffs have not yet survived a motion to dismiss."); *see also In re Orion Pictures Corp.*, 4 F.3d at 1101-02 ("If a case is non-core and a jury demand has been filed, a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference.  A district court, however, also might decide that a case is unlikely to reach trial, that it will require protracted discovery and court oversight before trial, or that the jury demand is without merit, and therefore might conclude that the case at that time is best left in the bankruptcy court.").

Instead, a court should not withdraw the reference based on a party's asserted right to a jury trial until the proceeding is trial-ready.  *See Enron Power Mktg. v. VA Power & Elec. Co. (In re Enron Corp.)*, 318 B.R. 273, 275 (S.D.N.Y. 2004) (denying the motion to withdraw the reference because "[t]he question of whether withdrawal of the reference 'for trial by jury, on asserted Seventh Amendment grounds, will become ... ripe for determination if and when the case becomes trial ready.'") (quoting *Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.)*, 136 B.R. 59, 61 (S.D.N.Y. 1992)).  Therefore, Wellmont's alleged right to jury trial, even if not waived, is insufficient to support granting the Motion.

## IV.   CONCLUSION

For the foregoing reasons, Lehman respectfully requests that the Court deny Wellmont's Motion to Withdraw the Reference.

Respectfully submitted,


___/s/ David S. Cohen_____
David S. Cohen
Nicholas A. Bassett
MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street, NW, Suite 1100
Washington, D.C. 20006
Telephone: (202) 835-7500
Facsimile: (202) 835-7586

*Attorneys for Debtors and Plaintiffs*
*Lehman Brothers Holdings Inc. and*
*Lehman Brothers Special Financing Inc.*

Dated:          Washington, D.C.
                March 21, 2014