USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___7/18/2014____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
LEHMAN BROTHERS HOLDINGS INC., et al,   :
                                        Plaintiffs,   :
                                                          :          14 Civ. 01083 (LGS)
                   -against-                          :
                                                          :          ORDER AND OPINION
WELLMONT HEALTH SYSTEM,                 :
                                        Defendant.   :
                                                          :
---------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

        Plaintiffs Lehman Brothers Holdings Inc. ("LBHI") and Lehman Brothers Special

Financing Inc. ("LBSF," and collectively with LBHI, "Lehman") commenced an adversary

proceeding in the United States Bankruptcy Court for the Southern District of New York, seeking

damages for Defendant Wellmont Health System's ("Wellmont") alleged breach of a swap

agreement.  Wellmont moves for permissive withdrawal of the reference to the bankruptcy court

pursuant to 28 U.S.C. § 157(d) ("Motion").  For the reasons that follow, the Motion is denied.

I.      BACKGROUND

        Wellmont is a not-for-profit healthcare provider with hospitals and other healthcare

facilities in northeast Tennessee and southwest Virginia.  It finances its operations through the

issuance of variable interest rate bonds and hedges the risk associated with the bonds through

various swap agreements, a number of which were entered into with LBSF pursuant to an ISDA

Master Agreement executed in 2002.  The swap agreement at issue was executed on June 29,

2006 ("TRS Agreement"), in connection with LBSF's purchase of $76,595,000 in bonds issued

on Wellmont's behalf by the Health, Educational and Housing Facilities Board of the County of

Sullivan, Tennessee.  The TRS stipulated that on a specified maturity date, September 1, 2011, one party would pay the other a "Return Amount," calculated by multiplying the outstanding value of the bonds as of the conclusion date by a "Swap Price" as defined in the TRS Agreement. If the par value of the bonds was positive on the maturity date, LBSF was required to pay the Return Amount to Wellmont, while if the par value was negative on that date, Wellmont would owe the Return Amount to LBSF.  According to Lehman, and significant for purposes of its breach-of-contract claim, the parties agreed for tax purposes that the bonds could not be redeemed before a call date on March 1, 2013.

On September 15, 2008, LBHI commenced bankruptcy proceedings under Chapter 11 of Title 11 of the Bankruptcy Code.  In or around late September 2008, the bonds were seized by a third party in satisfaction of a lien held against LBHI and sold to another third party.  On September 22, 2009, Wellmont filed a proof of claim in the bankruptcy court, asserting a contingent claim for amounts allegedly owed to Wellmont under the TRS Agreement.  On March 15, 2011, approximately six months before the TRS Agreement's maturity date, Wellmont issued a tender offer, purchasing all of the bonds and thereby reducing the outstanding value of the bonds, and consequently, the Return Amount, to zero.

On August 14, 2012, LBSF notified Wellmont that it had breached the TRS Agreement through its early redemption of the bonds and that the breach constituted an event of default under the ISDA Agreement, entitling LBSF to terminate the ISDA Agreement.  Subsequently, the parties engaged in unsuccessful settlement negotiations.  On October 23, 2013, Lehman informed Wellmont that, absent a resolution, LBSF intended to commence an adversary proceeding against Wellmont and provided Wellmont a copy of the draft complaint.

On November 14, 2013, Wellmont filed a notice of withdrawal of the proof of claim it

2

had filed on September 22, 2009.  On November 26, 2013, Lehman filed its Complaint,

commencing this adversary proceeding.  Lehman asserted four causes of action, two of them

contract based and two pursuant to the Bankruptcy Code, as follows: (1) breach of the TRS

Agreement; (2) breach of the implied covenant of good faith and fair dealing; (3) turnover of the

Return Amount pursuant to 11 U.S.C. § 542(b); and (4) violation of the automatic stay under 11

U.S.C. § 362 on account of Wellmont's failure to pay the Return Amount.  On February 20,

2014, Wellmont filed its Motion.

## II.    STANDARD

District Courts have original jurisdiction over bankruptcy cases and all civil proceedings

"arising under" or "related to" cases under Title 11.  28 U.S.C. § 1334(b).  The Southern District

of New York has a standing order that automatically refers all bankruptcy cases to the

Bankruptcy Court.  *See In re Standing Order of Reference Re: Title 11*, 12 Misc. 32 (S.D.N.Y.

Feb. 1, 2012); *accord Lehman Bros. Holdings Inc. v. JP Morgan Chase Bank, N.A.* (*In re Lehman*

*Bros. Holdings Inc.*), 480 B.R. 179, 187 (S.D.N.Y. 2012).  28 U.S.C. § 157(d), however, provides

for permissive withdrawal of the reference, stating in pertinent part that "[a] district court may

withdraw . . . any case or proceeding referred [to the bankruptcy court] on its own motion or on a

timely motion of any party, for cause shown."

Section 157(d) does not define the term "cause."  In *Orion Pictures Corp. v. Showtime*

*Networks Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095 (2d Cir. 1993), the Second Circuit

established a multi-factor test to guide district courts in determining whether "cause" exists for

withdrawal.  Under that test, which has since been modified as discussed below, a court must first

make a "threshold" determination of whether the proceeding is "core" or "non-core."  *Id.* at 1101.

"A core proceeding . . . is one that invokes a substantive right under the Bankruptcy Code or that

could arise only in the context of a bankruptcy case." *Lehman Bros. Holdings Inc. v. Intel Corp.* (*In Re Lehman Bros. Holdings Inc.*), 502 B.R. 376, 382 (Bankr. S.D.N.Y. 2009) (construing 28 U.S.C. § 157(b)).  A non-core proceeding is one that "is related to a case under title 11," and "might have a conceivable effect on the estate."  *Id.* (citations omitted).  At the time *Orion* was decided, the distinction was significant because for core claims, bankruptcy judges could enter final judgments (subject to appellate review by the district court), but for non-core claims, they could issue only proposed findings of fact and conclusions of law, subject to *de novo* review by the district court, absent party consent.  *See* 28 U.S.C. § 157(c).  Under the *Orion* test, once the core/non-core determination is made, a district court must "weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors."  *Orion*, 4 F.3d at 1101.  The moving party bears the burden of demonstrating that permissive withdrawal of the reference is warranted. 28 U.S.C. § 157(d); *see also Nisselson v. Salim*, No. 12 Civ. 92, 2013 WL 1245548, at *3 (S.D.N.Y. Mar. 25, 2013).

A number of district courts have modified the *Orion* test on account of the Supreme Court's later decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011).  In *Stern*, the Court held that bankruptcy courts lack constitutional authority to enter final judgment on core claims, with three exceptions: (1) the defendant filed a proof of claim in the bankruptcy proceeding; (2) the right being adjudicated is public rather than private; or (3) the parties consented to have the bankruptcy court enter final judgment.  *Id.* at 2606, 2612-16.  *Stern* and the Bankruptcy Code left a gap in the law, however, regarding the procedure to be followed with respect to core claims for which bankruptcy courts could not enter final judgments; § 157(c) expressly authorizes a bankruptcy court to issue findings of fact and conclusions of law as to non-core claims but is silent as to core

claims.  In *Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2172 (2014), the Supreme Court clarified that a bankruptcy court confronted by a so-called "*Stern* claim," is empowered to issue proposed findings of fact and conclusions of law, subject to *de novo* review by the district courts.  *Id.* at 2173.

Post-*Stern*, courts in this district have concluded that "the relevant inquiry under the first prong of the *Orion* test is not whether a matter is core or non-core, but whether the bankruptcy court has the authority to finally adjudicate the matter."  *Penson Fin. Servs. Inc. v. O'Connell* (*In re Arbco*), 479 B.R. 254, 262 (S.D.N.Y. 2012); *Sec. Investor Prot. Corp.*, 486 B.R. 579, 582 n.1 (S.D.N.Y. 2013) (citations omitted); *but see Lehman Bros. Holdings Inc. v. Intel Corp.* (*In re Lehman Bros. Holdings Inc.*), No. 14 Civ. 293, 2014 WL 1877937, at *3 n.1 (S.D.N.Y. May 10, 2014) (citing original *Orion* factors and declining to "decide the effect of the Supreme Court's decision in [*Stern*], on the application of the *Orion* factors []" where bankruptcy court had already conducted a core/non-core inquiry).

## III.  DISCUSSION

The *Orion* factors, as modified post-*Stern*, weigh in favor of maintaining this action in the bankruptcy court.

As to the first factor, whether the bankruptcy court has final adjudicative authority, neither party disputes that there is no proof of claim at issue and that the parties have not mutually consented to have the bankruptcy court enter final judgment.   Accordingly, the relevant inquiry for purposes of analyzing this factor is whether the rights at issue are public and accordingly subject to final adjudication by the bankruptcy court, or whether they are private and accordingly exempt from the bankruptcy court's final adjudicative authority.  Because the gravamen of Lehman's Complaint is breach of contract, which entails adjudication of private rights, the

bankruptcy court lacks final adjudicative authority.

The public rights exception applies to "cases in which the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert government agency is deemed essential to a limited regulatory objective within the agency's authority." *Stern*, 131 S.Ct. at 2613. Stated another way, "what makes a right 'public' rather than private is that the right is integrally related to particular federal government action." *Id*. (citation omitted). The Supreme Court has expressly distinguished the "restructuring of debtor-creditor relations," from "the adjudication of state-created private rights, such as the right to recover contract damages," concluding that "[t]he former may well be a 'public right,' but the latter obviously is not." *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982). A private right is not transformed into a public one simply because the party seeking contractual damages does so in order to "augment its estate. . . ." *Id.*

Lehman's state common law claims for breach of a pre-bankruptcy petition contract and breach of the covenant of good faith and fair dealing involve purely private rights. *See In re Arbco*, 479 B.R. at 266 (concluding that state law claims of aiding and abetting a fraud, breach of fiduciary duty, breach of contract and negligence "are indisputably private rights."); *Lehman Bros. Holdings Inc.*, 2014 WL 1877937, at *3 ("There is no dispute that the Bankruptcy Court would not have constitutional authority to enter final judgment on [Lehman's breach-of-contract claim.]"). Lehman's two remaining claims for turnover and violation of the automatic bankruptcy stay, while asserted under the Bankruptcy Code, are wholly dependent on the outcome of the contract claims, and thus do not bring this case within the ambit of the public rights exception. For these reasons, the bankruptcy court lacks final adjudicative authority over this matter.

If the bankruptcy court enjoyed final adjudicative authority to decide Lehman's claims, the first *Orion* factor would weigh strongly against withdrawal of the reference.  That the bankruptcy court lacks final adjudicative authority to decide Lehman's claims, however, does not necessarily lead to the opposite conclusion – that the first *Orion* factor weighs in favor of withdrawal of the reference.  Rather, the remaining *Orion* factors, and in particular, considerations of judicial efficiency, suggest that despite the bankruptcy court's lack of final adjudicative authority, this matter should be left to the bankruptcy court in the first instance.

First, judicial efficiency will be served by keeping the present action in the bankruptcy court given its substantial experience with the Lehman bankruptcy proceedings, the breadth and complexity of which are unparalleled, and the numerous swap agreement disputes that have arisen in the context of those proceedings.  *See Lehman Bros. Holdings Inc.*, 2014 WL 1877937, at *4.  This specialized knowledge will contribute to swifter resolution of the claims at issue, which, in turn, will reduce the costs to the parties.  *See Lehman Bros. Holdings Inc.*, 502 B.R. at 382 ("[I]t is most efficient and eminently sensible for all disputes involving swap agreements where Lehman and its affiliates are counterparties to be handled in this [Bankruptcy] Court.").  Further, although the bankruptcy court is limited to issuing a report and recommendation, which must be reviewed *de novo* by the district court, neither court's efforts will be duplicative.  Multiple courts have observed that "experience strongly suggests that having the benefit of the report and recommendation will save the district court and the parties an immense amount of time."  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff Sec.*), 490 B.R. 46, 56 (S.D.N.Y. 2013); *accord N.E. Indus. Dev. Corp. v. Parkstone Capitals Partners, LLC* (*In re N.E. Indus. Development Corp.*), 511 B.R. 51, 54 (S.D.N.Y. 2014); *Nisselson*, 2013 WL 1245548, at *6.  Accordingly, considerations of judicial efficiency strongly counsel against

withdrawal of the reference.

Second, uniformity in the administration of bankruptcy law likewise weighs in favor of leaving the case in bankruptcy court.  While, as discussed above, Lehman's claims are principally private and contractual in nature, they are brought within the context of similar disputes arising out of various derivatives agreements entered into by Lehman and adjudicated as part of the Lehman bankruptcy.  The bankruptcy court's adjudication of the claims at issue here contributes to "intra-case uniformity" among the similar claims brought in the Lehman bankruptcy.  *See, e.g., Lehman Bros. Holdings Inc.*, 2014 WL 1877937, at *4 ("Courts in this District have also emphasized intra-case uniformity, and concluded in analogous contexts that because '[t]he Lehman bankruptcy involves numerous disputes involving derivatives contracts . . . uniformity is clearly served by leaving all those disputes in the hands of a single court.'") (internal citation omitted).

Finally, the factor of prevention of forum-shopping is neutral because both parties appear to have engaged in some form of jurisdictional jockeying.  Wellmont argues that Lehman added duplicative bankruptcy code claims to what is in essence a contractual dispute in order to avail itself of bankruptcy court jurisdiction.  Lehman counters that Wellmont engaged in forum shopping by withdrawing a long-pending proof of claim (by which Wellmont submitted itself to the jurisdiction of the bankruptcy court), immediately after learning of Lehman's intent to file an adversary proceeding.  In a case with analogous facts and similar allegations of forum-shopping, Judge James Peck voiced "a concern about the 'gaming' of bankruptcy jurisdiction that [was] evident both in the allegations of the complaint and in [the] motion to dismiss."  *Lehman Bros. Holdings Inc.*, 502 B.R. at 382.  The same concern is warranted here, and accordingly the final *Orion* factor does not sway the balance either way.  Because considerations of judicial efficiency

and uniformity tip the balance against withdrawal of the reference to the bankruptcy court, however, the *Orion* factors favor denying Wellmont's Motion.

As a final reason for withdrawal of the reference to the bankruptcy court, Wellmont asserts that the bankruptcy court's retention of this action would violate Wellmont's Seventh Amendment right to a jury.  Wellmont's argument is premature, however, given that the prospect of a trial is speculative at best in this early stage of the proceedings.

The Constitution "prohibits bankruptcy courts from holding jury trials in non-core matters."  *Orion Pictures Corp.*, 4 F.3d at 1101.  "[P]ermissive withdrawal to take 'the case to a district court for trial by jury, on asserted Seventh Amendment grounds, will become a question ripe for determination if and when the case becomes trial-ready.'"  *Walker, Truesdell, Roth & Assocs. v. Blackstone Grp.* (*In re Extended Stay, Inc.*), 466 B.R. 188, 198 (Bankr. S.D.N.Y. 2011) (footnote omitted).  The right to a jury trial is less relevant at an early stage in the proceedings, particularly where considerations of judicial efficiency weigh against withdrawal of a bankruptcy reference.  *N.E. Indus. Dev. Corp.*, 511 B.R. at 54 (collecting cases); *Nisselson*, 2013 WL 1245548, at *6 (same).  Accordingly, Wellmont's right to a jury trial does not mandate withdrawal of the reference at this stage of the proceedings.

## IV.    CONCLUSION

For the foregoing reasons, Wellmont's Motion is DENIED without prejudice to renewal if and when this matter proceeds to trial.  The Clerk of Court is directed to close the Motion at Docket No. 1 and to remand this matter to the bankruptcy court.

SO ORDERED.

Dated: July 18, 2014
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE